MILBERG LLP
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Tel:    (213) 617-1200
Fax:    (213) 617-1975


*Attorneys for Plaintiff Alan Levy*
*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN LEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>   v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br><br>                  Defendant. | Case No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR:**<br><br>NEGLIGENCE<br><br>VIOLATIONS OF THE CALIFORNIA CONSUMER RECORDS ACT§§1798.81.5, 1798.82<br><br>VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ.;<br><br>INVASION OF PRIVACY<br><br>NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT; AND<br><br>VIOLATION OF NEW YORK GENERAL BUSINESS LAW; GBL§349 |

Plaintiff Alan Levy ("Levy" or "Plaintiff") alleges the following, upon personal knowledge with respect to himself, and on information and belief derived from, among other things, investigation of counsel and review of public documents, as to all other matters:

## I.     INTRODUCTION

1.     This is a class action on behalf of the millions of customers of T-MOBILE whose personally identifiable information ("PII") was disclosed to one or more criminal actors by Experian, through a hack caused by Experian's inadequate security measures.  Plaintiffs seek relief under California law on behalf of a class of all consumers in the United States who had their PII stolen as a result of the breach.  Plaintiffs also seek relief under New York law, on behalf of a sub-class of customers of T-MOBILE in New York whose PII stolen.

2.     T-MOBILE is a provider of cell-phones and cellular telephone and data plans to consumers nationwide. As one of the largest providers of cell phone service in the United States, T-MOBILE runs credit checks on prospective.

3.     Experian is a private company that operates as a credit bureau in the United States. In this capacity, it collects and maintains information that form a person's credit history, and, using proprietary analysis, generate a credit score that other companies use as a measure of credit worthiness. Experian also offers related data and credit services both to businesses and consumers.

4.     T-MOBILE pays Experian to run credit checks, and process credit applications for its prospective customers.

5.     On October 1, 2015, Experian revealed that it had suffered a massive breach of its technology system. As a result, criminal hackers had gained access to servers containing sensitive and confidential data of approximately 15 million consumers who applied for T-Mobile services.

6.     This breach included not only information from T-MOBILE customers, but information from potential consumers who never purchased products or services from T-Mobile.

COMPLAINT

7.      The PII exposed in this breach includes: full names, Social Security numbers, driver's license numbers, addresses, phone numbers, email addresses, employment information (including income data), dates of birth, and other personal information.

8.      Adding insult to injury, after failing to safeguard the sensitive information entrusted to it,  Experian offered to fix the problem by consumers its *own* credit monitoring service, free for two years.  See https://www.protectmyid.com/default.aspx?sc=678628

9.      This theft occurred because of Experian's failure to take reasonable measures to ensure its data systems were adequate to protect the sensitive personal data of its customers and former customers. Among other things, Experian failed to implement data security measures designed to prevent this attack despite repeated warnings to all businesses that store this type of PII about the risks of such cyber-attacks, failed to employ security protocols to detect the unauthorized network activity, failed to disclose to its customers the material facts that it did not have adequate computer systems and data security practices to safeguard customers' personal data, and failed to provide immediate and accurate notice of the data breach to its customers. These failures have injured Plaintiffs and the Class.

10.     Given recent, highly publicized data breaches effecting consumers of Target, Anthem, Premera, Home Depot, and others; Defendant's failure to protect this information is hard to comprehend. As a result of this failure, and like millions of other T-Mobile customers, Plaintiffs' PII has been stolen as a result of Experian's conduct.

11.     Because of Defendants' negligence, some 15 million customers had their personal information, including names, birthdates, email addresses, employment details, Social Security numbers, incomes; and street addresses, stolen by criminal hackers.

12.     The information obtained as a result of the conduct complained of herein is a treasure trove for identity thieves who use it to gain access to every aspect of a victim's life, or worse, to create a new life using the victim's identity for years to come.

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and 1332 (d), because the amount in controversy exceeds

$5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the Class are citizens of states different from that of Defendants.

14. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is appropriate pursuant to 28 U.S.C. § 1391. A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. Additionally, Defendant resides here as it maintains its principle office and headquarters in this District.

**III.     THE PARTIES**

16. Plaintiff Alan Levy is a New York citizen who resides in Brooklyn, New York. Mr. Levy has been a T-Mobile customer since September 2014. On or about October 1, 2015, Mr. Levy was contacted by T-Mobile and informed that he had upgraded his service and added a new user, a Bernard Medina, to his plan. Unfortunately, Levy had authorized no such thing, and did not know any Bernard Medina. He contacted T-Mobile and was informed that someone had hacked into his account and made changes to his security protocol, allowing them to order additional phones on his account. Mr. Levy was alerted by the customer service representative that T-Mobile customers were the victim of the Experian breach, and was assured that the problem was fixed. However, approximately one week later, Mr. Levy was again the victim of unauthorized use of his T-Mobile account. This time, the fictitious Bernard Medina struck in person, walking into a T-Mobile store and buying six IPhones on Levy's account. As of today, despite Plaintiff's protestations, his outstanding T-Mobile bill is $3400 as a result of this breach.

17. Defendant Experian is headquartered at 475 Anton Blvd, Costa Mesa, California, 92626.

**IV.     FACTUAL ALLEGATIONS**

18. When customers apply for cellphone or data service from T-Mobile, they are subjected to a standard credit check.

19. Experian handles all such requests for T-Mobile, and as such, stores all PII that T-Mobile collects from its customers in making credit decisions.

- 3 -

20.     On or about October 1, 2015, Experian notified T-Mobile and the public that Experian experienced "an unauthorized acquisition of information" from a server containing T-Mobile-related data, including the Personal Data of approximately 15 million persons who applied for T-Mobile USA postpaid services or device financing from September 1, 2013 through September 16, 2015. According to Experian, "[t]he data acquired included names, dates of birth, addresses, and Social Security numbers and/or an alternative form of ID like a drivers' license number, as well as additional information used in T-Mobile's own credit assessment."

21.     "The data set was for applicants and customers of T-Mobile who applied for service over that two year period," said Experian spokeswoman Susan Henson, meaning that the breach effected T-Mobile and non- T-Mobile customers alike.

22.     According to Experian, the breach happened weeks before it was detected T-Mobile COE John Legere said "{O}bviously I am incredibly angry about this data breach," while promising a "thorough review" of his company's relationship with Experian. http://www.t-mobile.com/landing/experian-data-breach.htmlAdditionally,   Experian   told   T-Mobile   the encryption protecting the PII may have been compromised, Legere said.

23.     This breach is made even more troubling by the fact that Experian holds itself out as an expert in the field of data protection and knows better than any company the dangers of identity theft.  Indeed, Experian offers identity theft protection services to consumers. On its website, Experian explains identity theft as follows:

> As many as 12 million Americans have their identity stolen each year. Who's protecting your identity?
>
> Product Overview
>
> Identity theft occurs when someone uses your personal identifying information, without your authorization, in order to perpetrate fraud or other offenses, such as obtaining loans, services or credit. To reduce your risk and help protect yourself and your family, you need complete identity theft protection. Experian's Identity Theft Protection product can help catch identity theft and fraud when it happens and help you regain your good name and credit.

- 4 -

1  [footnote omitted]. http://www.experian.com/consumer-products/identity-theft-and-credit-protection.html

24. Experian's security breach is shocking not only because it holds itself out as an identity theft expert, but because *this is not the first time that T-Mobile had its customer information exposed through a breach of Experian's system.* According to cybersecurity expert Brian Krebs, the problems at Experian should come as no surprise, and indeed, are a result of Experian's growth-by-acquisition strategy.

25. In an article titled "At Experian, Security Attrition Amid Acquisitions", Krebs provides insight into the issues based on interviews with former Experian security personnel, and details a previous breach:

> On Dec. 30, 2013, T-Mobile said it notified a "relatively small" number of customers that unauthorized access to a file stored on servers owned by Experian had exposed Social Security numbers and driver's license numbers. The mobile provider identified the breached vendor as Decisioning Solutions, an identity-proofing and authentication company that was acquired by Experian in April 2013. We'll revisit this acquisition in a few moments.
>
> \*\*\*
>
> KrebsOnSecurity has interviewed a half-dozen security experts who said they recently left Experian to find more rewarding and less frustrating work at other corporations. Nearly all described Experian as a company fixated on acquiring companies in the data broker and analytics technology space*, even as it has stymied efforts to improve security and accountability* at the Costa Mesa, Calif. based firm."

http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/

26. According to former Chief Information Security Officer Jasun Tate "What the board of directors at Experian wanted security-wise and the security capabilities on the ground were two completely different things," Tate said. "Senior leadership there said they were pursuing a very aggressive growth-by-acquisition campaign. The acquisition team would have a very strict protocol on how they assess whether a business may be viable to buy, but the

1    subsequent integration of the business into our core security architecture was just a black box of

2    magic in terms of how it was to be implemented. And I'm not saying successful magic at all." *Id*.

3      27. It is well known and the subject of many media reports that PII data is highly

4    coveted by and a frequent target of hackers and is often easily taken because it is inadequately

5    protected. Legitimate organizations and the criminal underground alike recognize the value in

6    PII. Otherwise, they would not pay for it or aggressively seek it. PII data has been stolen and

7    sold by the criminal underground on many occasions in the past, including PII held by Defendant

8    Experian itself in prior data breaches, and accounts of the thefts and unauthorized access have

9    been the subject of many media reports. Criminals are increasingly after PII because they can use

10   biographical data from multiple sources to perpetuate more and larger thefts. *See* Verizon 2014

11   PCI Compliance Report, available at http://www.verizonenterprise.com/resources/reports/rp_pci-

12   report-2014 _ en_ xg.pdf (hereafter "Verizon Report"). Illicitly obtained PII, sometimes

13   aggregated from different breaches, is sold on the black market, including on websites, as a

14   product, at a set price. *See*, e.g., KREBS ON SECURITY, How Much is Your Identity Worth,

15   http://krebsonsecurity.com/2011/11/how-much-is-your-identity-worth/ (last visited October 5,

16   2015). Despite all of the publically available knowledge of the continued compromises of PII

17   and Defendant's own prior experiences, Defendants' approach to maintaining the privacy of

18   Plaintiff's and Class Members' PII was lackadaisical, cavalier, reckless or at the very least

19   negligent.

20     28. The ramifications of Defendant's failure to keep Class Members' PII secure are

21   severe. Once PII is stolen, fraudulent use of that information and the damage to consumers can

22   continue for years

23     29. As a result of Defendants' failure to prevent the breach, Plaintiff and Class

24   Members have suffered and will continue to suffer damages, including pecuniary losses, anxiety,

25   and emotional distress. They have suffered or are at increased risk of suffering from:

26     • the loss of the opportunity to control how their PII is used;

27     • the diminution in the value and/or use of their PII, entrusted to Defendants for the

28      purpose of obtaining cellular telephone services with the understanding that

Defendants and its employees/managers would safeguard their PII against theft and not allow access and misuse of their PII by others;

- the compromise, publication and/or theft of their PII;

- out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts;

- lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity and health care/medical data misuse;

- costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets;

- unauthorized use of compromised PII to open new financial and/or health care or medical accounts;

- the continued risk to their PII, which remains in the Defendants possession and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect the PII in their possession;

- current and future costs in tern's of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of the Class members and their families/spouses/dependents.

## V.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action pursuant to Rule 23 (a), (b)(2)and (b)(3) of the Federal Rules of Civil Procedure. He brings this action on his own behalf and on behalf of all other similarly situated persons. Plaintiff is informed and believes there are millions of members in the proposed Class. The National Class is defined as follows:

> *All persons in the United States for whom Experian performed a credit check related to their T-Mobile account between September 1, 2013, and September 16, 2015.*

31.    Additionally, Plaintiff brings this action on behalf of a New York sub-class defined as:

> *All citizens of New York who for whom Experian performed a credit check related to their T-Mobile account between September 1, 2013, and September 16, 2015 ("New York Sub-Class").*

32.    Excluded from the class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the class and definitions if discovery and further investigation reveal that the class should be expanded or otherwise modified.

33.    There is a well-defined community of interest in the litigation and the class is readily ascertainable.

34.    The class is so numerous that joinder of all members is impracticable. Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court.  The prospective class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the retailers who sell the Devices.

35.    The claims of the representative Plaintiff are typical of the claims of the prospective class members in that the representative Plaintiff and the prospective class members purchased Devices designed, manufactured, and distributed by Defendants and equipped with a defective battery charging system.  The representative Plaintiff, like all prospective class members, has been damaged by Defendants' misconduct in that she has purchased a product that has failed, or will fail.  Furthermore, the factual bases of Defendants' misconduct are common to

all prospective class members and represent a common thread resulting in injury to all prospective class members.

36. Questions of law and fact exist that are common to the class, and predominate over any question affecting individual class members. These include, among others:

(a) Whether Defendants negligently failed to implement and maintain commercially reasonable procedures to ensure the security of Class Members'

(b) Whether Defendants, after discovering the data breach, negligently failed to take steps to: (i) promptly notify the Class; and (ii) protect Class Members in a timely manner;

(c) Whether Defendants owed a fiduciary obligation to the members of the Class and whether that fiduciary obligation was breached as a result of the Defendants' actions and inactions;

(d) Whether there exists an implied contract between the members of the Class on one hand, and Defendants on the other hand, and whether the actions and inactions of Defendants breached that implied contract;

(e) Whether Defendants should be required to pay for the reasonable cost of credit monitoring services; and

(f) To the extent that some Class Members have already sustained damage as a result of identity theft brought about by Defendants' actions and inactions, what is the proper measure of damages, and the proper method for determining those damages, on a Class-wide basis.

37. Plaintiff is committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the class and Plaintiff has the same interests as the other members of the class. Accordingly, Plaintiff is an adequate representative of the class and will fairly and adequately protect the interests of the class.

38. The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for Defendants, or adjudications

with respect to individual members of the class, which would as a practical matter be disjunctive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

39.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the class and, therefore, preliminary and final injunctive relief on behalf of the class, as a whole, is appropriate.

## FIRST CAUSE OF ACTION
### Negligence Under California Law (on behalf of National Class)

40.     Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

41.     Upon accepting and storing Class Members' PII in its respective computer database systems, Defendants undertook and owed a duty to Class Members to exercise reasonable care. It was Defendants' obligation to secure and safeguard that information and to utilize commercially reasonable methods to do so. Defendants knew that the PII was private and confidential and should be protected as private and confidential.

42.     Defendants breached its duties to Class Members to adequately protect and safeguard this information by knowingly disregarding standard principles relating to the securing of PII. Defendants negligently failed to provide adequate supervision and oversight of the PII which was, and is, entrusted to them, in spite of the known risks and foreseeable likelihood of breach and misuse. Defendants' failures permitted third persons to gather Class Members' PII, misuse the PII, and intentionally disclose it to others without consent.

43.     The law also imposes an affirmative duty on Defendants to timely disclose the theft of the PII so that Class Members could be vigilant in attempting to determine if any of their accounts or assets had been stolen through identity theft.

44.     Through Defendants' acts and omissions described in this Complaint, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Class Members' PII during the time it was within Defendants' possession or control.

45.     Further, through their failure to provide timely and clear notification of the data breach to consumers, Defendants negligently prevented Class Members from taking meaningful, proactive steps to investigate possible identity theft.

46.     Defendants improperly and inadequately safeguarded PII of Class Members in deviation of standard industry rules, regulations and practices at the time of the unauthorized access.

47.     Given the extensive publicity about the efforts of criminal enterprises to obtain PII, it was foreseeable to Defendants that the Plaintiff's PII in their possession might be attractive to hackers and other criminals.

48.     For all the reasons stated above, Defendants' conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Class Members' PII; and failing to provide Class Members with timely and sufficient notice that their sensitive PII had been compromised.

49.     Neither Plaintiff nor the other Class Members contributed to the data breach or subsequent misuse of their PII as described in this Complaint.

50.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff and every member of the Class has been put at risk of identity theft and has an obligation to mitigate damages through credit monitoring services. Defendants are liable to each and every member of the Class for the reasonable costs of future credit monitoring services. Defendants are also liable to those Class Members who have directly sustained damages as a result of their identity theft.

### SECOND CAUSE OF ACTION
### Violation of California's Consumer Records Act
### (Civ. Code, § 1798.80, Et Seq.)
### On Behalf of The National Class

51.     Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

- 11 -

52.     "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code section 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

53.     Defendants are a "business" within the meaning of Civil Code section 1798.80(a).

54.     Plaintiff and members of the Class are "individual[s]" within the meaning of Civil Code section 1798.80(d).

55.     Pursuant to Civil Code sections 1798.80(e) and 1798.81.5(d)(1)(C), the data theft included the theft of "personal information" as meant by those sections, including names, addresses, Social Security numbers, and driver's license or state identification card numbers.

56.     The breach of personal data of thousands of former or current or prospective customers of T-Mobile constituted a "breach of the security system" of Defendants, under Civil Code section 1798.82(g).

57.     By failing to implement reasonable measures to protect its former and current and prospective customers' personal data, Defendants violated Civil Code section 1798.81.5.

58.     In addition, by failing to promptly notify all affected former and current and prospective customers of Defendants that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Defendants violated Civil Code section 1798.82 of the same title. Defendants' failure to timely notify customers of the beach has caused Class members damages because they had to take measures to remediate the breach caused by Defendants' negligence.

59.     By violating Civil Code sections 1798.81.5 and 1798.82, Defendants "may be enjoined" under Civil Code section 1798.84(e).

60.     Accordingly, Plaintiff and the Class request that the Court enter an injunction requiring Defendants to implement and maintain reasonable security procedures to protect customers' data in compliance with the California Customer Records Act, including, but not

limited to: (1) ordering that Defendants, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis; (2) ordering that Defendants engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures; (4) ordering that Defendants purge, delete, and destroy in a reasonable secure manner patient data not necessary for their business operations; (5) ordering that Defendants, consistent with industry standard practices, conduct regular database scanning, real-time network traffic analysis, and security checks; (6) ordering that Defendants, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (7) ordering Defendants to meaningfully educate their former and current and prospective customers about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (8) ordering Defendants to implement a written policy for implementation of the items (1) through (7), above.

61.     Plaintiff further requests that the Court require Defendants to (1) identify and notify all members of the Class who have not yet been informed of the data breach; and (2) to notify affected former and current customers of any future data breaches by email within 24 hours of Defendants' discovery of a breach or possible breach.

62.     As a result of Defendants' violation of Civil Code sections 1798.81.5 and 1798.82, Plaintiff, individually and on behalf of the members of the Class, seeks remedies under Civil Code section 1798.84, specifically, equitable relief.

63.     Plaintiff, individually and on behalf of the members of the Class, also seeks reasonable attorney's fees and costs under applicable law, including Code of Civil Procedure section 1021.5.

### THIRD CAUSE OF ACTION
**Violation Of California Unfair Competition Laws (Bus. & Prof. Code, § 17200)**
**On Behalf of The National Class**

64.     Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

65.     Plaintiff brings this cause of action on behalf of Plaintiff and the Class members whose personal information was compromised as a result of the data breach.

66.     Defendants' acts and practices, as alleged in this complaint, constitute unlawful and unfair business practices in violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code, § 17200, et seq.

67.     Defendants' acts and practices, as alleged in this complaint, constitute unlawful and unfair practices in that they violate Civil Code section 1798.80, et seq., and because Defendants' conduct was negligent.

68.     Defendants' practices were unlawful and in violation of Civil Code section 1798.81.5(b) because Defendants failed to take reasonable security measures in protecting their former and current and prospective customers' personal data.

69.     Defendants' practices were also unlawful and in violation of Civil Code section 1798.82 because Defendants unreasonably delayed informing Plaintiff and members of the Class about the breach of security after Defendants knew that the data breach occurred.

70.     The acts, omissions, and conduct of Defendants constitute a violation of the unlawful prong of the UCL because they failed to comport with a reasonable standard of care and public policy as reflected in statutes such as the Information Practices Act of 1977, Civ. Code, § 1798, et seq., and the California Customer Records Act, Civ. Code, § 1798.80, et seq., which seek to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

71.     Defendants violated the "unfair" prong of the UCL because their acts and/or omissions were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members, and because their acts and/or omissions constitute conduct that undermines or violates the stated policies underlying the California

- 14 -

Customer Records Act and other privacy statutes. In enacting the California Customer Records Act, the Legislature state that: "[i]dentity theft is costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative." (2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST).) Defendants' conduct also undermines California public policy as reflected in other statutes such as the Information Practices Act of 1977, Civ. Code, § 1798, et seq., which seeks to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

72.     As a direct and proximate result of Defendants' unlawful business practices as alleged herein, Plaintiff and members of the Class have suffered the following injuries in fact and losses of money or property: (1) loss of opportunity to control how their PII is used; (2) diminution in the value and/or use of their PII; (3) the compromise, publication, and/or theft of their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft or unauthorized use of financial and medical costs; (5) lost opportunity costs and loss of productivity from efforts to mitigate the actual and future consequences of the theft of PII; (6) cost associated with the inability to use credit and assets frozen or flagged as a result of credit misuse; (7) unauthorized use of compromised PII; (8) tax fraud or other unauthorized charges to financial, health care, or medical accounts; (9) continued risk to PII that remain in the possession of Defendants, as long as Defendants fail to undertake adequate measures to protect PII; and (10) future costs in terms of time, effort, and money that will be expended to prevent and repair the impact of the data breach.

73.     As a direct and proximate result of Defendants' unlawful business practices as alleged herein, Plaintiff and the Class members face an increased risk of identity theft based on the theft and disclosure of their personal information.

74.     As a result of Defendants" violations, Plaintiff and members of the Class are entitled to injunctive relief, including, but not limited to: (1) ordering that Defendants, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests,

- 15 -

and audits on Defendants" systems on a periodic basis; (2) ordering that Defendants engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures; (4) ordering that Defendants purge, delete, and destroy in a reasonable secure manner patient data not necessary for their business operations; (5) ordering that Defendants, consistent with industry standard practices, conduct regular database scanning, real-time network traffic analysis, and securing checks; (6) ordering that Defendants, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (7) ordering Defendants to meaningfully educate their former and current customers about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (8) ordering Defendants to implement a written policy for implementation of the items (1) through (7) above.

75.    Because of Defendants' unfair and unlawful business practices, Plaintiff and the Class are entitled to relief, including (1) restitution to Plaintiff and Class members of the losses they incurred as a result of the data breach and restitution and disgorgement of all profits accruing to Defendants as a result of their unlawful and unfair business practices; (2) attorneys' fees and costs; (3) declaratory relief; and (4) a permanent injunction enjoining Defendants from their unlawful and unfair practices.

**FOURTH CAUSE OF ACTION**
**Invasion Of Privacy Pursuant to California Law**
**On Behalf of The National Class**

76.    Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

77.    Experian invaded Plaintiff's and the Class members' right to privacy by allowing the unauthorized access to Plaintiff's and Class members' PII and by negligently maintaining the confidentiality of Plaintiff's and Class members' PII, as set forth above.

- 16 -

78.     The intrusion was offensive and objectionable to Plaintiff, the Class members, and to a reasonable person of ordinary sensibilities in that Plaintiff's and Class members' PII was disclosed without prior written authorization of Plaintiff and the Class 84.  The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff's and the Class members' provided and disclosed their PII to Experian, as customers of T-Mobile, privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

79.     As a proximate result of Defendants' above acts, Plaintiff's and the Class members' PII was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiff and the Class members suffered damages.

80.     Defendants are guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class members' personal information with a willful and conscious disregard of Plaintiff's and the Class members' right to privacy.

81.     Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiff and the Class members great and irreparable injury in that the PII maintained by Defendants can be viewed, printed, distributed, and used by unauthorized persons. Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Negligent Violation Of The Fair Credit Reporting Act**
**On Behalf of The National Class**

82.     Plaintiff and the Class incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

83.     Experian owed a duty to Plaintiff and Class Members to safeguard the security of their personal customer account information and to adopt and maintain reasonable procedures pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681(b) ("FCRA"), including procedures

to adequately secure its servers and sufficiently encrypt its passwords, in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information.

84.     Experian negligently failed to adopt and maintain reasonable procedures in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information in compliance with FCRA. In addition, Experian negligently violated FCRA because, by its failure to maintain reasonable procedures, hackers gained unauthorized access to consumer report information absent a permissible purpose.

85.     Plaintiff and Class Members suffered actual damages as a result of Experian's negligent violation of FCRA including but not limited to the lost monetary value of their personal customer account information, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety and emotional distress and loss of privacy.

86.     Plaintiff and Class Members are entitled to compensation for their actual damages as described above, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o(a).

### SIXTH CAUSE OF ACTION
### Breach of NY GBL § 349
### On Behalf of the NY Sub-Class

87.     Plaintiff hereby incorporates by reference each paragraph of this Complaint, as if fully set forth herein.

88.     Defendants' transactions with Plaintiff and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of "conduct of any trade or commerce" within the meaning of NYS GBL § 349.

89.     Defendants in the normal course of their business collected personal data including PII.

90.     Defendants in the normal course of their business collected user information stating that such data would remain private.

91.     Defendants' privacy policy promising to protect members' PII constitute an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation because Defendants knew that it had not adopted other adequate electronic or

92.     Defendants misrepresented the safety and security of their payment systems, including unauthorized unencrypted storage of customer financial information.

93.     Plaintiff and the class relied on the reasonable presumption that Defendants was meeting or exceeding all legal requirements in the daily practice of its business, including the collection and storage of PII

94.     The foregoing acts and conduct of Defendants are deceptive in that Defendants represented to the class that their PII would remain secure and/or that it had the technology or policies to secure this information when Defendants in fact did not have adequate security measures.

95.     Defendants did this in the normal conduct of its business.

96.     By these deceptive acts, Defendants caused harm to Plaintiff and the Class.

97.     Further, as a prerequisite to any transactions with Defendants, Plaintiff and the Class gave valuable financial and personal information to Defendants in order to provide information as a prerequisite for getting a cell-phone.

98.     Defendants did this in the normal conduct of its business.

99.     Defendants led Plaintiff and the Class to believe that their PII were necessary to provide information for credit check

100.    Defendant retained information about potential or past clients well beyond the useful life of such information for its intended purpose to provide information for credit checks.

101.    Defendants retained the information of millions of consumers that were no longer its clients, if ever.

102.    Defendants retained the information of millions of consumers past the time that such information would be needed for it use in credit checks.

103.    By these deceptive acts, Defendants caused (and continue to cause) harm to Plaintiff and the Class.

**Negligence Pursuant to New York Law**
**On Behalf of the NY Sub- Class**

104.     Plaintiff hereby incorporates by reference each paragraph of this Complaint, as if fully set forth herein.

105.     Defendants have a duty to follow standards and procedures including industry standards, and other state and federal statutes.

106.     Plaintiff and the class have a right to rely on a presumption that Defendants would use industry standards or equal methodology to secure PII.

107.     Defendants knew or recklessly disregarded the risk of data loss of PII by not protecting the internal databases containing that PII.

108.     Defendants systematically failed to monitor its computer security and unauthorized accessibility and other requirements for security management, policies, procedures, and other critical protective measures.

109.     Defendants failed to use common forms of data protection to secure PII sufficient that it would not be susceptible to theft.

110.     By not using widely accepted and adequate data security measures, Defendants were negligent in their duty to safeguard PII.

111.     Subsequent to the Breach, Defendants failed to offer a refund of premiums to Plaintiff and the class equal to the difference in cost to what Defendants actually spent to secure its IT infrastructure and what it would cost to secure that infrastructure sufficient to meet industry standards.

112.     Subsequent to the Breach, Defendants failed to monitor credit or sufficiently offer third party credit monitoring for no charge to the class members in a timely fashion.

113.     As the result of Defendants' conduct, Plaintiff and the class were harmed.

**VI.     RELIEF SOUGHT**

114.     Plaintiff respectfully requests the Court enter a judgment and order as follows:

- 20 -

115.    For an order certifying that the action may be maintained as a class action under Rule 23(a), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure; certifying Plaintiff as a representative of the Class defined above and designating his undersigned counsel as counsel for the Class;

116.    A mandatory injunction directing that Defendants hereafter adequately safeguard the PII of the Class by implementing improved security procedures;

117.    A mandatory injunction requiring that Defendants provide notice to each member of the Class relating to the full nature and extent of their PII that has been accessed by unauthorized persons;

118.    For damages as provided by state and federal law;

119.    For an award of attorneys' fees and costs as may be permitted by law; and

120.    For all other legal and equitable relief as the Court may deem just and proper.

COMPLAINT

**VII.    DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of any and all issues in this action so triable.

DATED: October 19, 2015,                                  **MILBERG LLP**

By:_____
                David E. Azar
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Tel.: (213) 617-1200
Fax: (213) 617-1975
Email: dazar@milberg.com

Ariana J. Tadler
Andrei Rado
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:  (212) 529-5300
Facsimile:  (212) 868-1229
Email:  arado@milberg.com
jseredynski@milberg.com

**LAX LLP**
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, New York 10168
Telephone:  (212) 818-9150
Facsimile:  (212) 208-4309
Email: rlax@lax-law.com

*Counsel for Plaintiff Alan Levy*